FILED
United States Court of Appeals
Tenth Circuit

June 5, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CORNELIA TOM TAPAHA,

      Defendant-Appellant.

No. 17-2104

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:16-CR-01099-MV-1)**
_____

Justine Fox-Young, Albuquerque, New Mexico (Robert J. Gorence, Gorence & Oliveros, Albuquerque, New Mexico, with her on the briefs), for Defendant-Appellant.

Marisa A. Ong, Assistant United States Attorney (James D. Tierney, Acting United States Attorney, with her on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.
_____

Before **MATHESON**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

    Ms. Cornelia Tapaha was convicted of assault for hitting her boyfriend, Mr. Myron Yazzie, with her car. She appeals this conviction, arguing that the district court

- violated her constitutional right to present a defense by excluding certain testimony from three witnesses: (1) Ms. Tamara Tapaha, Cornelia's sister;[1] (2) Mr. Yazzie; and (3) Cornelia herself,

- violated the Confrontation Clause by excluding certain testimony by Mr. Yazzie, and

- erred in refusing to admit redacted portions of an interview with a law-enforcement officer.

We conclude that

- exclusion of the testimony did not deprive Cornelia of her right to present a defense,

- exclusion of certain testimony by Mr. Yazzie did not violate the Confrontation Clause, and

- the district court did not err in excluding the redacted interview statements.

Therefore, we affirm.

## I.    Background

To analyze Cornelia's appellate arguments, we begin with the acts underlying the conviction and consider how they related to the evidence that was excluded.

### A.    Cornelia runs her car into Mr. Yazzie, allegedly in self-defense.

The acts underlying the conviction are largely undisputed. Cornelia and Mr. Yazzie picked up Tamara, and the three of them drank together in

---

[1]    For ease of reference, we refer to the Tapahas by their first names.

2

the car. As Mr. Yazzie drove, he grew increasingly agitated by Cornelia's need to make frequent stops so that she could urinate.

When they arrived at a gas station, Cornelia went inside and Mr. Yazzie retrieved a large wrench and put it in the back seat. On returning to the car, Cornelia learned about the wrench; she later confronted Mr. Yazzie about what he was planning to do with it. Mr. Yazzie responded by punching Cornelia in the face, and the two continued to bicker.

Eventually, Mr. Yazzie exited the car while yelling at Cornelia. Cornelia followed Mr. Yazzie with the car and "nicked" him once. Appellant's App'x, vol. 2 at 792. At that point, Mr. Yazzie started pounding on the hood and yelling. He then moved away,[2] and Cornelia struck him again with the car.

In district court, Cornelia asserted self-defense, alleging that she had been scared because of years of abuse by Mr. Yazzie. To support this defense, Cornelia sought to present evidence of Mr. Yazzie's past acts of violence.

The district court allowed Cornelia, Tamara, and Mr. Yazzie to testify about the day of the incident and three prior instances of Mr.

---

[2]    Cornelia testified that Mr. Yazzie had moved a short distance away and then "was standing there" when she hit him the second time. Appellant's App'x, vol. 2 at 793. In contrast, Tamara testified that Mr. Yazzie had "kind of [run]" before Cornelia struck him. *Id.* at 623.

3

Yazzie's violence toward Cornelia. But the court excluded testimony about other acts of violence.

**B.    Cornelia tells a police officer about past acts of violence, but the court admits only a redacted version of the statements.**

After hitting Mr. Yazzie with her car, Cornelia spoke to a police officer (Mr. Jefferson Joe). At trial, Officer Joe testified about some of Cornelia's statements. Cornelia sought introduction of other statements that she had made to Officer Joe, but the district court excluded them.

## II.    Constitutional Right to Present a Defense

In claiming the denial of a constitutional right to present a defense, Cornelia relies on the exclusion of testimony by herself, Tamara, and Mr. Yazzie.

### A.    Standard of Review

For this claim, we apply

- the abuse-of-discretion standard to the district court's application of the Federal Rules of Evidence and

- de novo review to the constitutionality of the evidentiary rulings.

*See United States v. Dowlin*, 408 F.3d 647, 659 (10th Cir. 2005).

### B.    The Admitted Testimony

To apply this standard, we must consider how the excluded testimony related to the evidence introduced at trial.

4

### 1. The Day of the Incident

The district court allowed extensive testimony by Cornelia and Tamara about the day of the incident. The sisters described the events on the day in question, which included four relevant facts:

1. The sisters feared what Mr. Yazzie might do with the wrench after retrieving it.

2. After leaving the gas station, Cornelia and Mr. Yazzie argued and Mr. Yazzie seemed "jealous about something." Tamara testified that Mr. Yazzie had frequently gotten jealous and that when he did, he would get mad at Cornelia. Appellant's App'x, vol. 2 at 615.

3. Mr. Yazzie tried to hit Cornelia multiple times and landed a blow to her face while she was driving, causing her to swerve.

4. After they pulled over, Tamara left the car and started walking away. Cornelia testified that at that point, Mr. Yazzie hit her again and threatened her, saying that he wished she was dead and that he would "make [going to jail] worth it this time." *Id.* at 788.

In testifying about these facts, Cornelia stated that she had hit Mr. Yazzie with the car to protect herself, explaining that she wanted to scare him because he would otherwise have continued to hurt her if he had reentered the car. *Id.* at 794.

### 2. Mr. Yazzie's Prior Acts of Violence

The district court also admitted testimony from the three witnesses about Mr. Yazzie's prior violence toward Cornelia. For example, Cornelia testified that Mr. Yazzie would "usually" hit her with a closed fist and that

5

his blows would "always [be] on the face." *Id.* at 757.[3] Mr. Yazzie added that he had hit Cornelia when they were living together and that he had gone to jail as a result.

The witnesses also testified about three prior incidents.

First, both sisters testified that on Halloween a few years earlier,

- Tamara, Cornelia, and Mr. Yazzie had been drinking in a car;

- Mr. Yazzie had gotten drunk, stopped the car, and argued with Cornelia; and

- Mr. Yazzie then hit Cornelia in the face and pushed her into oncoming traffic.

Second, Cornelia testified about a past incident in which Mr. Yazzie had punched her in the face and stabbed her brother in the chest with a knife. Mr. Yazzie corroborated this incident, though he claimed that he had only "poked" Cornelia's brother with the knife. *Id.* at 711.

Third, Cornelia testified about another incident in which Mr. Yazzie had hit her twice in the face with his fist.

## C. The Excluded Testimony

Cornelia unsuccessfully tried to present additional testimony from the three witnesses. That testimony would have encompassed both the day of the incident and Mr. Yazzie's prior acts of violence.

---

[3] Cornelia included multiple references to what would "always" or "usually" happen. But the district court tried to limit these references and told the jury to disregard them.

6

### 1. The Day of the Incident

The proposed testimony included a proffer of testimony by Mr. Yazzie about the day of the incident. Mr. Yazzie would have testified that

- he believed that Cornelia's running him over was an accident and that Cornelia had not been trying to hurt him,

- he had heard that he could "get pretty aggressive" when he blacked out,

- he had a violent character and had gone to jail for drunken violence,

- he got what he deserved because of his aggression and past violence toward Cornelia, and

- he "probably" would have "continued to hurt [Cornelia] had she not stopped [him] by hitting [him] with the car" because of his penchant for violence.

*Id.* at 727, 729. The district court excluded Mr. Yazzie's proposed testimony about Cornelia's state of mind on the ground of relevance. In addition, the court excluded the other proposed testimony without an explanation.

### 2. Mr. Yazzie's Prior Acts of Violence

The district court also excluded testimony that would have provided greater detail about Mr. Yazzie's history of violence toward Cornelia.

First, the three witnesses would have testified generally about Mr. Yazzie's past violence. For example, Mr. Yazzie would have testified that

- he had a short fuse when drinking and

- he had pushed Cornelia against the wall a few times.

7

Similarly, Tamara would have testified that Mr. Yazzie had frequently been violent to Cornelia and would push her around two to three times per month, often using a closed fist to hit Cornelia in the chest or face. And Cornelia would have testified that Mr. Yazzie had abused her throughout their relationship. This abuse, inflicted about every other week, generally involved blows to Cornelia's face or head.

The three witnesses also would have testified about additional incidents of violence. For example, Tamara would have testified about two incidents:

1.      Mr. Yazzie once drank heavily and acted cruelly to Cornelia. When the two of them went to their bedroom, Tamara heard yelling and thumps from Cornelia getting thrown against the wall. Tamara then saw Mr. Yazzie slap Cornelia in the face.

2.      Another time, Tamara heard Mr. Yazzie push Cornelia against the wall and saw him hit her head against the wall.

Likewise, Cornelia would have testified about three other incidents:

1.      Mr. Yazzie once hit Cornelia's brother on the head with a wrench. This was the same wrench that Mr. Yazzie had retrieved before getting hit with the car.

2.      Three or four times, Mr. Yazzie locked Cornelia out of their apartment and she had to sleep in the car.

3.      Twice, Mr. Yazzie smashed the windows of Cornelia's car— once while she was still in the car.

8

Cornelia tried to use this history of abuse to bolster her self-defense claim; she would have testified that these experiences led her to fear for her safety on the day of the incident.

The district court excluded the proposed testimony, reasoning that

- testimony had already been presented on the most serious prior incidents and

- the lack of specific descriptions or dates for the incidents had rendered them insufficiently similar or close in time to the events underlying the present charge against Cornelia.

The court also noted that (1) the wrench was not used on the day of the incident and (2) the prior incident with the wrench had taken place much earlier.

## D. The Constitutional Analysis

Cornelia argues that exclusion of the proffered testimony violated her constitutional right to present a defense. The Fifth and Sixth Amendments grant a defendant the "right to testify, present witnesses in his own defense, and [] cross-examine witnesses against him—often collectively referred to as the right to present a defense." *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004). But this right is not absolute; a defendant must still "'abide the rules of evidence and procedure.'" *United States v. Dowlin*, 408 F.3d 647, 659 (10th Cir. 2005) (quoting *United States v. Bautista*, 145 F.3d 1140, 1151 (10th Cir. 1998)); *see Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not

9

have an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence.").

In light of the need to satisfy evidentiary requirements, Cornelia bears a two-part burden on her constitutional claim. First, she must demonstrate that the district court abused its discretion in excluding the evidence. *Dowlin*, 408 F.3d at 659. Second, she must demonstrate that the excluded evidence "'was of such an exculpatory nature that its exclusion affected the trial's outcome.'" *Id.* (quoting *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997)).

Attempting to satisfy this two-part burden, Cornelia argues that

- the excluded evidence was admissible under Federal Rules of Evidence 404(b) and 405 and

- the erroneous exclusion of this evidence impaired her ability to present her central claim of self-defense.

Although she was able to describe her fear on the day of the incident, Cornelia argues that

- her abusive relationship with Mr. Yazzie affected the objective reasonableness of her fear and

- the jury could not properly assess Cornelia's stated fears without knowing about Mr. Yazzie's abusive history.

We conclude that the district court acted within its discretion in excluding some of Mr. Yazzie's proffered testimony based on the Federal Rules of Evidence. Even if the other proffered testimony should have been

10

allowed under the federal evidentiary rules, exclusion would not have infringed Cornelia's constitutional right to present a defense.

### 1. Properly Excluded Statements by Mr. Yazzie

Some of Mr. Yazzie's proffered testimony was impermissibly speculative, warranting exclusion under the Federal Rules of Evidence.[4] Under these rules, a witness can testify about something only if he or she has personal knowledge. Fed. R. Evid. 602; *see* Fed. R. Evid. 701 (stating that a witness can give an opinion only if it is "rationally based on the witness's perception"). Accordingly, testimony is inadmissible when it is speculative. *See Hill v. J.B. Hunt Transp., Inc.*, 815 F.3d 651, 666 n.10 (10th Cir. 2016).

Two of Mr. Yazzie's statements were properly excluded as speculative:

1. Mr. Yazzie characterized the incident as an accident and thought that Cornelia had not intended to hurt him.

2. Mr. Yazzie stated that he probably would have continued to hurt Cornelia if she had not run him over, which was based on his statement that he tends to be aggressive when he blacks out.

For the first statement, Mr. Yazzie would have testified about Cornelia's state of mind. But Mr. Yazzie admittedly lacked any recollection of the incident; thus, his surmise about Cornelia's thinking

---

[4] The district court did not rely on the speculative nature of this testimony. But we may affirm the court's decision on any basis supported by the record. *United States v. Pam*, 867 F.3d 1191, 1195 n.1 (10th Cir. 2017).

11

was not based on his personal knowledge. *See Lowry v. City of San Diego*, 858 F.3d 1248, 1255-56 (9th Cir. 2017) (en banc) (upholding the district court's exclusion of testimony because the witness was sleeping at the time of the event, preventing the "personal knowledge" required by the Federal Rules of Evidence).

For the second statement, Mr. Yazzie would have opined that Cornelia needed to act in self-defense because he probably would have continued to hurt her if she had not run him over. Mr. Yazzie did not profess to remember that he had intended to hurt Cornelia; rather, he testified that others had remarked that he would act aggressively when blacking out during his drunken spells. He therefore stated that

- he tends to act violently when drinking and

- "because of . . . [his] character trait for violence," he "probably" would have continued to hurt Cornelia if she had not taken action.

Appellant's App'x, vol. 2 at 729.

But Mr. Yazzie admitted that he could not recall being run over, what his intentions had been, or how much of a threat he had posed to Cornelia. His testimony was merely that he tends to act violently when drunk and that his drunkenness would probably have led him to inflict more injuries if Cornelia had not stopped him. This speculation was not admissible under the Federal Rules of Evidence. *See* p. 11, above.

## 2.    The Remaining Testimony that Was Excluded

The other excluded testimony falls within four general categories:

1.    Additional details involving Mr. Yazzie's abuse of Cornelia throughout the relationship,

2.    Mr. Yazzie's character for violence when drunk,

3.    the incident when Mr. Yazzie hit Cornelia's brother with a wrench, and

4.    the two incidents in which Mr. Yazzie smashed the windows of Cornelia's car.

*See* Part II(C), above. Cornelia argues that this testimony was necessary to show the reasonableness of her fear when she hit Mr. Yazzie with the car. But even if the district court had abused its discretion in excluding this evidence, the ruling would not have violated the right to present a defense.

Our assumption of evidentiary error would satisfy the first step of the constitutional analysis. *See* p. 10, above. At the second step, we consider whether the excluded evidence "'was of such an exculpatory nature that its exclusion affected the trial's outcome.'" *United States v. Dowlin*, 408 F.3d 647, 659 (10th Cir. 2005) (quoting *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997)); *see* p. 10, above. This inquiry consists of two questions:

1.    Was the proffered testimony "'the type that if believed would have, by necessity, exculpated the defendant'"?

2.    If the proffered testimony had been admitted, would it "'have created a reasonable doubt that did not exist without the evidence'"?

13

*Dowlin*, 408 F.3d at 660 (quoting *Richmond*, 122 F.3d at 874). The answer to both questions is "no."

First, even if the excluded evidence had been relevant, this evidence would not necessarily have proven the reasonableness of Cornelia's fear of serious bodily injury. *See United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014) (stating that a valid self-defense claim requires that the fear of harm be reasonable). Cornelia does not argue otherwise, asserting only that the excluded evidence would have created a "reasonable probability" of a different outcome. Appellant's Opening Br. at 50.

Second, if the excluded testimony had been admitted, it would not have created a reasonable doubt about the outcome based on the cumulativeness of the evidence and the weakness of Cornelia's self-defense claim.

### a.  Cumulativeness

The excluded evidence would not have added anything significant to the testimony already admitted. The four categories of excluded evidence might have been relevant to explain Cornelia's fear of Mr. Yazzie. But the jury had already heard ample evidence about why Cornelia was scared. For example, the jury had already heard about Mr. Yazzie's frequent acts of drunken violence and his violence on the day of the incident. Thus, the jury was fully aware that

14

- Cornelia had been abused by Mr. Yazzie throughout their relationship and

- this abuse had continued on the day of the incident.

Additional details about Mr. Yazzie's past abuse and his character for violence would not have meaningfully added to the existing evidence.

In addition, the prior incident involving the wrench would have added little to the extensive evidence of violence already presented to the jury. The wrench was arguably relevant because its presence might have frightened Cornelia. But Cornelia had an extensive opportunity to testify about the wrench and did, describing what she thought when she learned that Mr. Yazzie had retrieved the wrench and put it in the back seat.

The window-breaking incidents would likewise have added little. Cornelia testified that Mr. Yazzie had nothing in his hands when she ran him over; in the prior incidents, Mr. Yazzie had broken the car windows with cinder blocks and an iron bar. To the extent that Cornelia was afraid Mr. Yazzie might nonetheless break her car windows, she had an ample opportunity to testify about her fear of Mr. Yazzie at the time of the incident.

In these circumstances, we conclude that the excluded testimony would have added relatively little to the evidence that was ultimately allowed.

15

**b.      Weakness of Cornelia's Self-Defense Claim**

Even with the additional testimony, Cornelia's assertion of self-defense would have remained weak. It was undisputed that

- Mr. Yazzie had exited the car and was walking away before Cornelia "nicked" him the first time and

- Mr. Yazzie had then walked or run away from the vehicle and had his back to Cornelia when she struck him the second time.

When walking or running away, Mr. Yazzie was empty-handed, and Cornelia could have driven away or called the police. *See United States v. Talamante*, 981 F.2d 1153, 1157 (10th Cir. 1992) (noting that a self-defense claim fails when the defendant could have safely withdrawn from the conflict but did not do so). And Cornelia never told law-enforcement officials that she had acted in self-defense; instead, she admitted hitting Mr. Yazzie because she was angry. In these circumstances, we conclude that Cornelia's self-defense claim was weak.

*  *  *

If the excluded evidence had been admitted, it would not have created a reasonable doubt about the outcome. Therefore, any error in excluding this evidence did not violate Cornelia's constitutional right to present a defense. *See id.* (holding that there was no violation of the right to present a defense because the defendant "had the opportunity to testify, to state that he feared the victim, to argue self-defense, and to [examine]

16

the victim and bring out the facts related to the victim's propensity for violence").

## III. Confrontation Clause

In addition, Cornelia urges a violation of the Confrontation Clause when the district court restricted her cross-examination of Mr. Yazzie.[5] But Mr. Yazzie was Cornelia's own witness, and he was never declared adverse. Cornelia accordingly conducted a direct examination of Mr. Yazzie, and it was the government that cross-examined him.

Cornelia provides no explanation or support for her contention that she had a right to *cross*-examine Mr. Yazzie. Rather, this argument is just another way of claiming that the district court infringed Cornelia's right to present a defense by excluding Mr. Yazzie's proffered testimony. *See Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997) (noting that the right to present defense-witness testimony implicates the rights to due process and compulsory powers rather than the Confrontation Clause); *accord United States v. Wilkens*, 742 F.3d 354, 364 (8th Cir. 2014) (holding that the Confrontation Clause does not apply to exclusion of testimony from the defense's own witnesses).

---

[5] Cornelia forfeited this argument by failing to raise it in district court. *United States v. Williams*, 888 F.3d 1126, 1131 (10th Cir. 2018). But the government does not argue for forfeiture; we therefore exercise our discretion to consider this argument on the merits. *See id.*

## IV.  Redacted Interview Statements

Finally, Cornelia claims that the district court erred by excluding portions of an interview that she had given to Officer Joe shortly after the incident. The government presented a redacted version of the interview. In this version, Cornelia stated that she had run over Mr. Yazzie because she was mad at him. But the government excised all of Cornelia's references to Mr. Yazzie's past abuse. Cornelia unsuccessfully tried to present the excised portions, arguing that they bore on her assertion of self-defense.

In district court Cornelia recognized that the statements would ordinarily constitute hearsay, but she argued that the statements were admissible (1) as prior consistent statements to rebut a charge of recent fabrication, *see* Fed. R. Evid. 801(d)(1)(B),[6] and (2) as impeachment of Officer Joe's testimony, *see* Fed. R. Evid. 801(d)(1)(A). We conclude that the district court did not abuse its discretion in rejecting both arguments.

### A.  Prior Consistent Statements

Cornelia characterizes the excised statements as prior consistent statements because they were consistent with her trial theory of self-

---

[6]     On appeal, Cornelia argues that the statements were admissible "as prior consistent statements regarding her reasonable fear of injury." Appellant's Opening Br. at 21. To the extent that Cornelia is arguing that the statements were admissible to rebut a charge of recent fabrication, that argument is addressed below. To the extent that Cornelia instead means to argue that the statements were admissible to prove her state of mind, this argument was forfeited because it had not been raised in district court. *United States v. Gould*, 672 F.3d 930, 938 (10th Cir. 2012).

18

defense. But prior consistent statements are admissible only if they "rebut an express or implied charge that the declarant recently fabricated [the testimony]." Fed. R. Evid. 801(d)(1)(B)(i). And when Cornelia proffered the excised statements, there had not yet been an express or implied charge of fabrication.

Cornelia points to the government's subsequent closing argument. There the government argued that Cornelia's testimony had been "completely inconsistent" with her statements to officers. Appellant's App'x, vol. 2 at 932. But Cornelia's theory is unpersuasive because

- the government did not present its closing argument until after Cornelia had offered the excised statements and

- the closing argument did not suggest that Cornelia had fabricated her account.

In its closing argument, the government referred to inconsistencies between Cornelia's trial testimony and other evidence. But the government did not suggest that Cornelia had fabricated her account.

In light of the absence of a prior allegation of recent fabrication, the district court acted within its discretion in rejecting Cornelia's theory as a basis to introduce the excised statements.

19

**B. Impeachment**

Cornelia insists that the excised statements were also admissible to impeach Officer Joe's testimony. We disagree.

At trial, Officer Joe testified:

Q. Now, Mr. Joe, during any of your conversations with the Defendant in this matter, did she ever claim that she was physically abused by Myron Yazzie on July 8th of 2015 [the date of the incident]?

A. No.

Q. Did she ever claim that she was threatened by him on July 8th of 2015?

A. No.

Q. Did she ever claim that she was hit or touched by him in an angry manner on July 8th of 2015?

A. No.

Q. Did she ever claim she had to protect herself or defend herself from him to protect herself or another person on July 8th, 2015?

A. No.

Q. Why did she consistently claim that she hit Mr. Yazzie?

A. Because she was mad.

Appellant's App'x, vol. 2 at 162-63. Cornelia's interview included this exchange, which was excluded at trial:

CI Jefferson Joe: All right. What was the argue—besides him threatening to walk off again, was there some other reasons why the anger in you just came out?

20

> Cornelia Tapaha: We'd been together for like five years and he used to be really abusive towards me. . . . He used to like hit me, throw me around, and stuff like that . . . .
>
> . . .
>
> CI Jefferson Joe: I understand that you're—you're angry, and you just told us that, you know, your anger just got out and with the years of physical abuse and, you know, the drinking and—and everything just came out.
>
> . . .
>
> CI Jefferson Joe: Your relationship with Myron, you told us about this five, six years of physical abuse and (inaudible) mental—mental abuse also. Was there anything in court that you filed against him?

Appellant's App'x, vol. 1 at 136, 139, 149.

Cornelia insists that this exchange should have been allowed. For this contention, Cornelia characterizes Officer Joe's testimony as stating that Cornelia had not complained of abuse. According to Cornelia, the excised statements would undermine this testimony by showing that she had raised self-defense in her interview. This argument fails because the excised statements were consistent with Officer Joe's testimony.

Officer Joe testified only that Cornelia had not said anything about the need to defend herself on the day of the incident, for every question asked only what Cornelia had said about that particular day. By contrast, all of the excised statements pertained to Mr. Yazzie's *past* abuse. Cornelia's statements about past abuse did not conflict with Officer Joe's trial testimony about statements involving the day of the incident.

21

Officer Joe characterized Cornelia's prior statements as an admission that she had run over Mr. Yazzie because she was mad. This characterization of the interview was consistent with Cornelia's excised statements. Cornelia never asserted in the interview that she had acted in self-defense, and she recounted the past abuse to explain why she was mad. Therefore, the excised statements do not conflict with Officer Joe's trial testimony. In these circumstances, we conclude that the district court acted within its discretion in excluding the excised statements.[7]

## V.    Conclusion

We conclude that

- Mr. Yazzie's speculative testimony was properly excluded under the Federal Rules of Evidence and the exclusion of other testimony did not deprive Cornelia of her constitutional right to present a defense,

- Cornelia has not shown a violation of the Confrontation Clause, and

- the district court acted within its discretion in excluding the excised portions of Cornelia's statements to Officer Joe.

Therefore, we affirm.

---

[7]    The government also argues that Cornelia's excised statements could not be used to impeach Officer Joe because they were not his own statements. *See Garcia-Martinez v. City & Cty. of Denver*, 392 F.3d 1187, 1194 (10th Cir. 2004) ("[I]mplicit in the use of prior inconsistent statements to impeach is the requirement that the impeached witness actually made the prior statement."). We need not address this argument.

22